UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALLEY NATIONAL BANK,<br><br>    Plaintiff<br><br> v.<br><br>JHB TRUCKING INC.,<br><br>    Defendant, | No. 2:21-cv-01285-TLN-CKD<br><br>**ORDER** |
| JHB TRUCKING INC.,<br><br>    Counterclaimant,<br><br> v.<br><br>VALLEY NATIONAL BANK,<br><br>    Counter-Defendant, | |
| JHB TRUCKING INC.,<br><br>    Third-Party Plaintiff,<br><br> v.<br><br>MST INSURANCE SERVICES INC. and GLOBAL CENTURY INSURANCE BROKERS, INC.,<br><br>    Third-Party Defendant. | |

1

This matter is before the Court on Counter-Defendant Valley National Bank's ("Counter-Defendant") Motion to Dismiss. (ECF No. 15.) Counterclaimant JHB Trucking Inc. ("Counterclaimant") filed an opposition. (ECF No. 18.) Counter-Defendant filed a reply. (ECF No. 21.) For the reasons set forth below, the Court GRANTS Counter-Defendant's motion with leave to amend.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant case arises from a dispute over a Premium Financing Agreement ("PFA") between the parties, under which Counterclaimant sought financing from Counter-Defendant[1] for its premium payments to Global Hawk Insurance Company ("Global Hawk") for a commercial insurance policy. (*See* ECF No. 13; *see also* ECF No. 15-1 at 7.) On or around June 2020, Global Hawk became insolvent and ceased operations, thus cancelling Counterclaimant's policy. (ECF No. 13 at 4.) On July 21, 2021, Counter-Defendant filed suit against Counterclaimant to collect debt as Counterclaimant was no longer making payments. (ECF No. 1 at 3.) On December 13, 2021, Counterclaimant filed an Answer and Counterclaim against Counter-Defendant. (ECF Nos. 11, 13.) Counterclaimant also filed suit against MST Insurance Services Inc. and Global Century Insurance Brokers (collectively, "Third-Party Defendants").[2] (ECF No. 13.) In short, Counterclaimant alleges Third-Party Defendants breached the PFA "by identifying and obtaining a policy from a company that was insolvent and on the verge of liquidation" and failing "to do the least amount of due diligence." (*Id.* at 4.) Counterclaimant alleges Counter-Defendant breached the PFA through the actions of its agents — Third-Party Defendants. (*Id.* at 5.) On January 13, 2022, Counter-Defendant filed the instant motion to dismiss. (ECF No. 15.)

## II. STANDARD OF LAW

Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under

---

[1] Pursuant to the PFA, financing was provided through Agile Premium Finance ("Agile"), a division of Counter-Defendant. (ECF No. 13 at 9.)

[2] The parties refer to Third-Party Defendants as "Brokers." (*See* ECF Nos. 13, 15-1, 18, 21.)

2

notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While

3

the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the district court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

Counterclaimant asserts the following counterclaims against Counter-Defendant: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) breach of implied contract. (*See* ECF No. 13.) Counter-Defendant moves to dismiss all three counterclaims, arguing that they fail as a matter of law. (ECF No. 15-1 at 12–17.)

#### A. Counterclaim One: Breach of Contract

Counterclaimant alleges Counter-Defendant "breached the [PFA] through the actions of its agents, [Third-Party Defendants], and their failure to conduct due diligence in investigating, identifying, and obtaining reputable and solvent insurance policy for [Counterclaimant]." (ECF

4

No. 13 at 5.) Counter-Defendant argues Counterclaimant alleges no facts to support the assertion that Third-Party Defendants are Counter-Defendant's agents.[3] (ECF No. 15-1 at 12–13.) Counter-Defendant also argues that Counterclaimant's boilerplate assertions of agency, conspiracy, aiding and abetting, and alter ego are inadequately pleaded. (*Id.* at 19–22.) In opposition, Counterclaimant asserts that if its allegations are accepted as true — specifically, that Counter-Defendant and Third-Party Defendants "acted in concert to fraudulently assign a worthless insurance policy to [Counterclaimant], then the provisions of the [PFA] which [Counter-Defendant] relies upon could be revoked under varying legal doctrines, such as unconscionability or fraud." (ECF No. 18 at 5.) The Court will address each of the theories of secondary liability in turn to ascertain whether they are adequately pleaded against Counter-Defendant.

            *i.*      *Agency*

Counter-Defendant argues Counterclaimant fails to meet any of the pleading requirements for agency. (ECF No. 15-1 at 20.) Counterclaimant clarifies in opposition that it "is claiming an agency relationship exists between [Counter-Defendant] and [Third-Party Defendants], and together they fraudulently led [Counterclaimant] to purchase insurance from a company on the brink of bankruptcy." (ECF No. 18 at 8.) Counterclaimant otherwise does not address Counter-Defendant's argument. (*See id.*)

The essential elements of an agency relationship are: "(1) that the agent or apparent agent holds the power to alter legal relations between the principal and third persons and between the principal and himself; (2) that the agent is a fiduciary with respect to matters within the scope of

---

[3] Counter-Defendants also argue: (1) the PFA does not place on Counter-Defendant or Third-Party Defendants a duty to investigate, so Third-Party Defendants could not have breached a duty found in the PFA even if they were Counter-Defendant's agents; (2) the PFA states explicitly that Third-Party Defendants are not Counter-Defendant's agents; (3) the PFA does not state Counter-Defendant has the duty to conduct due diligence or to ensure the policy selected by Counterclaimant is from a "reputable and solvent company"; and (4) two provisions of the PFA expressly address cancellation of a financed policy and agree Counter-Defendant would not have liability for the cancellation. (ECF No. 15-1 at 12–13, 18–19.) This matter is at the pleadings stage and most of these arguments go to the merits of this claim. The Court therefore need not and does not address the parties' arguments with respect to these issues.

the agency; and (3) that the principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Kreiser v. Asset Mgmt. Grp., Inc.*, No. SACV 20-01794JVS(DFMx), 2021 WL 3579414, at *3 (C.D. Cal. Apr. 23, 2021). For there to be an adequate claim, the principal must have made a request, instruction, or command to the agent. *Id.* Mere passive permission from the principal does not suffice. *Id.*

In the instant case, Counterclaimant has not alleged sufficient facts to establish an agency relationship existed despite alleging multiple times in a conclusory fashion that Third-Party Defendants were Counter-Defendant's agents. (*See* ECF No. 13.) Instead, Counterclaimant's own pleadings seem to provide a reasonable inference that Third-Party Defendants are *not* Counter-Defendant's agents. The PFA attached as Exhibit A of the Counterclaim states: "[Third-Party Defendants] [are] not the Agent of [Counter-Defendant] with the exception of any action taken on behalf of [Counter-Defendant]. [Counter-Defendant] is not bound by anything written or verbally conveyed to Insured and is not liable for any acts or omissions by the Agent, Broker or Insurance Carrier." (*Id.* at 17.) Counterclaimant has alleged no facts demonstrating Third-Party Defendants performed any acts on behalf of Counter-Defendant. (*See id.*) Claims require more than "unadorned, the [Counter-Defendant]-unlawfully-harmed-me accusation[s]," and Counterclaimant fails to meet this burden. *Iqbal*, 556 U.S. at 678. Thus, the Court finds Counterclaimant has failed to adequately allege an agency relationship between Counter-Defendant and Third-Party Defendants.

                *ii.*      *Conspiracy*

Counter-Defendant argues Counterclaimant "has not alleged any facts evidencing an agreement between [Counter-Defendant] and [Third-Party Defendants] concerning the selection of insurance." (ECF No. 15-1 at 21.) Counterclaimant does not address this argument in its opposition. (*See* ECF No. 18.)

Conspiracy claims must allege facts demonstrating: "(1) the formation and operation of the conspiracy[;] (2) wrongful conduct in furtherance of the conspiracy[;] and (3) damages arising from the wrongful conduct." *AREI II Cases*, 216 Cal. App. 4th 1004, 1022 (2013) (citing *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)). As it pertains to the formation

1  and operation of the conspiracy, a plaintiff must allege an agreement to commit the wrongful acts.
2  *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 893–94 (N.D. Cal. 2014).
3  "[W]hen a plaintiff alleges that a defendant is liable for intentional misrepresentation under a civil
4  conspiracy theory, Rule 9(b) requires that the plaintiff allege with particularity facts that support
5  the existence of a civil conspiracy." *Id.* at 894.
6        The Court finds that Counter-Defendant is correct.  Counterclaimant only alleges in
7  conclusory fashion that "[e]ach Counter-Defendant and Third-Party Defendant sued herein was
8  the co-conspirator of the other and was acting within the course and scope of a conspiracy formed
9  amongst each of them." (ECF No. 13 at 2.) Counterclaimant does not allege an agreement to
10  commit the wrongful acts by Counter-Defendant and Third-Party Defendants, nor does it set forth
11  factual allegations regarding the wrongful conduct in furtherance of the conspiracy. (*See id.*)
12                  *iii.*      *Aiding and Abetting*
13        Counter-Defendant argues that Counterclaimant does not allege Third-Party Defendants
14  committed an initial tort or that Counter-Defendant had knowledge of alleged wrongdoing by
15  Third-Party Defendants, and therefore liability on this theory is not adequately pleaded. (ECF
16  No. 15-1 at 21.) Counterclaimant does not address this argument in its opposition. (*See* ECF No.
17  18.)
18        "Liability may . . . be imposed on one who aids and abets the commission of an
19  intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives
20  substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to
21  the other in accomplishing the tortious result and the person's own conduct, separately
22  considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat'l Ass'n*, 127
23  Cal. App. 4th 1138, 1144 (2005) (internal quotation marks and citations omitted).
24        Counterclaimant again alleges in only a conclusory fashion that "[e]ach Counter-
25  Defendant and Third-Party Defendant sued herein aided and abetted the other with the intent that
26  each would be successful in their mutual endeavors." (ECF No. 13 at 2.) Counterclaimant does
27  not allege knowledge by Counter-Defendant that Third-Party Defendants' conduct constitutes a
28  breach of duty, nor substantial assistance by Counter-Defendant to Third-Party Defendants in

accomplishing a breach of the PFA. (*See id.*)

### iv. Alter Ego

Counter-Defendant argues that Counterclaimant does not allege any facts that there is a unity of interest or ownership between Counter-Defendant and Third-Party Defendants, nor does it allege any facts that Counter-Defendant is misusing its corporate form. (ECF No. 15-1 at 22.) Counterclaimant does not address this argument in its opposition. (*See* ECF No. 18.)

For the alter ego doctrine to be invoked, there must be: (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist"; and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000). "Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Id.* at 538–39 (internal citations omitted).

Counterclaimant yet again alleges in only a conclusory fashion that "[e]ach entity Counter-Defendant and Third-Party Defendant sued herein is a shell organization and is actually the alter ego of the other entity sued herein and due to the commingling and laundering of assets and personal use thereof and use for wrongful and illegal purposes Counterclaimant . . . hereby alleges that these individuals and entities are one and have a unity of interest and therefore the corporate structure must be disregarded." (ECF No. 13 at 2.) Counterclaimant does not provide any further allegations regarding alter ego liability. (*See id.*) Nor does Counterclaimant actually provide any specific factual allegations regarding the aforementioned factors to be considered in applying the alter ego doctrine. *See Sonora Diamond Corp.*, 83 Cal. App. 4th at 538.

In sum, the Court finds that Counterclaimant fails to adequately allege a theory of secondary liability that would make Counter-Defendant liable for its breach of contract claim. However, the Court at this juncture cannot determine "that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130. Accordingly, Counter-

1    Defendant's motion as to this counterclaim is GRANTED with leave to amend.

2            B.      Counterclaim Two: Breach of the Implied Covenant of Good Faith and Fair
3                    Dealing

4    Counter-Defendant argues a breach of the implied covenant of good faith and fair dealing claim "involves something beyond [a] breach of a contractual duty itself" and this counterclaim fails to do that because it is based on the same conduct and damages as its breach of contract counterclaim. (ECF No. 15-1 at 14 (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1392 (1990)).) Counter-Defendant maintains the redundancy of this claim "is highlighted by [Counterclaimant's] admission that [Counter-Defendant] 'unfairly interfered with its rights to receive the benefits of the [PFA] by failing to perform their obligations under the [PFA], because [Third-Party Defendants] failed to conduct due diligence . . . .'"[4] (*Id.* at 15 (citing ECF No. 13 ¶ 22).) In opposition, Counterclaimant asserts this counterclaim does not seek the same damages as its first counterclaim for breach of contract, as it "seeks what was bargained for, in this case an insurance policy for coverage of a full term of 12 months," whereas the first counterclaim "seeks monetary damages due to [Counter-Defendant] and [Third-Party Defendants'] failure to conduct due diligence in obtaining an insurance policy for [Counterclaimant]." (ECF No. 18 at 6.)

"Under California law, all contracts contain an implied covenant of good faith and fair dealing. This covenant requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co.*, 723 F.2d 700, 703 (9th Cir. 1984) (citing *Egan v. Mutual of Omaha Insurance Company*, 24 Cal. 3d 809, 818 (1979)). "It is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Gardner v. Nationstar Mortg. LLC*, No. 2:14-cv-1583-TLN-CKD, 2015

---

[4] Counter-Defendant also argues an express provision of the PFA contradicts the implied covenant counterclaim and therefore it fails for this additional reason. (ECF No. 15-1 at 15.) This argument goes to the merits of this counterclaim. Because this matter is in the pleadings stage, the Court therefore need not and does not address the parties' arguments with respect to this issue.

1    WL 1405539, at *6 (E.D. Cal. March 26, 2015). Indeed, California courts have also held that if
2    the allegations in this claim "do not go beyond the statement of a mere contract breach and,
3    relying on the same alleged acts, simply seek the same damages or other relief already claimed in
4    a companion cause of action, they may be disregarded as superfluous as no additional claim is
5    actually stated." *Careau & Co.*, 222 Cal. App. 3d at 1397.

6    The Court agrees with Counter-Defendant. Counterclaimant's allegations with respect to
7    this counterclaim are merely repetitive of its first counterclaim. (*See* ECF No. 13 at 5–6.)
8    Counterclaimant alleges that Counter-Defendant has "unfairly interfered" with its "right to
9    receive the benefits of the [PFA] by failing to perform their obligations . . . because [Third-Party
10   Defendants] failed to conduct due diligence to investigate and ensure that they obtain reputable
11   and solvent commercial insurance for [Counterclaimant's] business for the full policy term of 12
12   months." (*Id.* at 6.) Counterclaimant further alleges "Counter-Defendant breached the [PFA]
13   through the actions of its agents, the [Third-Party Defendants], and their failure to conduct due
14   diligence in investigation, identifying, and obtaining reputable and solvent insurance policy for
15   [Counterclaimant]." (*Id.*) Counterclaimant finally alleges that it has suffered damages "in an
16   amount to be proven at trial, but not less than $657,603.83." (*Id.*) These allegations and damages
17   are nearly identical to the factual allegations presented in the first counterclaim and they "do not
18   go beyond the statement of a mere contract breach." *Careau & Co.*, 222 Cal. App. 3d at 1397.
19   The Court therefore finds that these allegations "may be disregarded as superfluous as no
20   additional claim is actually stated." *Id.*

21   Again, the Court at this juncture cannot determine "that the pleading could not possibly be
22   cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130. Accordingly, Counter-
23   Defendant's motion as to this counterclaim is GRANTED with leave to amend.

24              C.     Counterclaim Three: Breach of Implied Contract

25   Counter-Defendant argues Counterclaimant "fails to describe any *conduct* giving rise to a
26   contract other than entering into the PFA" and therefore this counterclaim is deficient as a matter
27   of law. (ECF No. 15-1 at 16 (emphasis in original).) Counter-Defendant also argues that this
28   claim is deficient because it is duplicative of the breach of contract counterclaim and derives from

the same subject matter — namely, Counterclaimant "alleges an implied contract under which [Counter-Defendant] purportedly had a duty to obtain coverage from a solvent insurance company, which is the same duty allegedly imposed on [Counter-Defendant] under the PFA."[5] (*Id.* at 16–17.) In opposition, Counterclaimant maintains this counterclaim is not duplicative, as it has pleaded that Third-Party Defendants, acting as agents for Counter-Defendant, "entered into an agreement to obtain a commercial insurance policy for [Counterclaimant] but breached an implied contract by failing to obtain the policy from a financially solvent insurance company." (ECF No. 18 at 7.)

California courts have found that an implied in fact contract "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 999 (N.D. Cal. 2014) (citing *Retired Employees Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011); *Silva v. Providence Hosp. of Oakland*, 14 Cal. 2d 762, 773 (1939)).  It is also "well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Id.* at 999–1000 (citing *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996)).

In the instant case, the Counterclaim does not contain factual allegations to suggest that there was another agreement and intent to promise besides the PFA.  (*See* ECF No. 13 at 7–8.) Additionally, Counterclaimant's allegations with respect to this counterclaim are again near-identical to the allegations in its first counterclaim for breach of contract.  (*See id.*)  The Court therefore concludes that there cannot be a breach of implied-in-fact contract claim "where there exists between [Counterclaimant and Counter-Defendant] a valid express contract covering the same subject matter." *O'Connor*, 58 F. Supp. 3d at 999–1000.

Again, the Court at this juncture cannot determine "that the pleading could not possibly be

---

[5] Counterclaimant also argues that his counterclaim derives from the conduct of Third-Party Defendants as agents of Counter-Defendant, which is contrary to a specific provision of the PFA. (ECF No. 15-1 at 17.) As stated previously, the Court is at the pleadings stage and this argument goes to the merits of the claim. The Court therefore need not and does not consider arguments related to this issue.

11

cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130.  Accordingly, Counter-Defendant's motion as to this counterclaim is GRANTED with leave to amend.

**IV.    CONCLUSION**

For the aforementioned reasons, the Court GRANTS Counter-Defendant's Motion to Dismiss with leave to amend.  (ECF No. 15.)  Counterclaimant has thirty (30) days from the electronic filing date of this Order to file an amended counterclaim.  Counter-Defendant's responsive pleading is due twenty-one (21) days after the electronic filing date of the amended counterclaim.

IT IS SO ORDERED.

**DATED:  August 23, 2022**

Troy L. Nunley
United States District Judge

12